**In re TRI MANUFACTURING & SALES CO. 139 Harmon Avenue Lebanon, Ohio 39165 EIN# 31–0668529, Debtor.**

Bankruptcy No. 1–85–00400.

United States Bankruptcy Court, S.D. Ohio, W.D.

July 26, 1985.

## ORDER ON MOTION TO RECONSIDER APPOINTMENT OF ATTORNEYS FOR CREDITORS' COMMITTEE

BURTON PERLMAN, Bankruptcy Judge.

This voluntary chapter 11 case was filed February 19, 1985. A creditors' committee for unsecured creditors was appointed April 2, 1985. On May 8, 1985 the creditors' committee applied for the appointment as its attorneys Wiley Dinsmore, Lawrence R. Elleman and the law firm of Dinsmore and Shohl, (hereafter collectively "Dinsmore") as its attorneys. The file shows that Dinsmore disclosed that debtor owed Dinsmore $1,220.13 for legal services rendered prior to the filing of the petition, and that law firm undertook to forgive that

sum in the event that it was appointed to represent the creditors' committee. The court signed an Order May 24, 1985 approving the employment of counsel for the creditors' committee as requested in the application.

On May 31, 1985 the debtor moved to reconsider that Order. The reasons stated for the motion were that the attorneys appointed represented John R. Casner, Jr. who has an interest adverse to debtor in this case, and also because at the time of the filing of the case Dinsmore represented debtor. Debtor says that the current representation of the creditors' committee presents a conflict which presents grounds for disqualification of Dinsmore.

The matter came on for hearing. The testimony developed that Casner is presently a stockholder of debtor. He had been the general manager of debtor until October 1982, but at that time he was bought out of the company. Dinsmore had been general counsel for debtor up until the termination of Casner. Thereafter Wiley Dinsmore continued to represent debtor, but his activities were limited to debt collection. A buy-out arrangement extending over five years was entered into between debtor and Casner. Debtor presented evidence that Casner is now employed as a salesman by a competitor of debtor. This information is not rebutted by Dinsmore. Debtor declined to furnish any specific instances of knowledge which would have been gained by Dinsmore in the course of its representation which could be used adversely to debtor under the present circumstances.

It is debtor's position that the former representation as general counsel without specification of any particular matters known to Dinsmore which might be useful against the debtor, is sufficient to disqualify Dinsmore from representing the debtor. The theory urged by debtor is that representation of the creditors' committee by Dinsmore would require it to violate Canon 4 of the Ohio Code of Professional Responsibility which requires a lawyer to preserve the confidences of a client. We cannot agree.

We think that there is room in a proper case for disqualification of an attorney from representing generally a creditors' committee after having been general counsel to a debtor, but not on that ground alone in a case such as that before us. Here, the representation terminated three years ago. In addition Dinsmore's other client, Casner, was general manager of debtor, and Casner is freely available to the creditors' committee, so that matters known to Dinsmore are available as well from Casner. Under those circumstances, we consider that it would be inappropriate for us to remove a well regarded and competent law firm from representing the creditors' committee.

We have concluded, however, that representation by Dinsmore of Casner at the same time that it represents the creditors' committee must disqualify it. While § 1103(b) was amended in the 1984 Bankruptcy Amendments to remove the prohibition against simultaneous representation by an attorney both of a creditors' committee and an individual creditor, not all limitation on such simultaneous representation was removed. The Code at § 1103(b) bars representation of a creditors' committee at the same time as an attorney represents an entity "having an adverse interest in connection with the case." Adverse interest is not defined in the statute. A very useful and exhaustive case which provides insight into an appropriate definition is *In re Roberts*, 46 B.R. 815 (Bankr.Utah 1985), particularly at pp. 826–7. We extract from what there appears that it must be said that Dinsmore, representing both Casner and the creditors' committee is representing adverse interests. The reason for this conclusion is that the predisposition of each in approaching some questions which must inevitably arise in the course of this chapter 11 case may well be in conflict.

Thus, at § 1103(c)(2) the creditors' committee is instructed that it may:

investigate the acts, conduct, assets, liabilities, and financial condition of the

debtor, the operation of the debtor's business and **the desirability of the continuance of such business** ... (Emphasis supplied.)

It is all too clear that a competitor of debtor will have a different "predisposition" in evaluating the desirability of the continuance of debtor's business than will an ordinary creditor. We are compelled to conclude that interests of a competitor of debtor and of the creditors' committee are adverse.

Accordingly, debtor's motion is sustained. The order entered May 24, 1985 approving the appointment of Wiley Dinsmore, Lawrence R. Elleman and the law firm of Dinsmore and Shohl to represent the creditors' committee is vacated.

SO ORDERED.